## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 29 2016, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Bruce N. Elliott
Marion, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Termination of the Parent-Child Relationship of H.H.:, | September 29, 2016 |
| | Court of Appeals Case No. 27A04-1602-JT-445 |
| A.S. (Mother) and J.H. (Father), *Appellants-Respondents,* | Appeal from the Grant Superior Court |
| v. | The Honorable Dana J. Kenworthy, Judge |
| The Indiana Department of Child Services, *Appellee-Petitioner.* | Trial Court Cause No. 27D02-1504-JT-11 |

**Vaidik, Chief Judge.**

# Case Summary

A.S. ("Mother") and J.H. ("Father") appeal the termination of their parental rights to H.H. They argue that the trial court erred because there is insufficient evidence to establish a reasonable probability that the circumstances leading to the child's removal will not be remedied and that termination is in the child's best interests. Concluding that the trial court's judgment is not clearly erroneous, we affirm.

# Facts and Procedural History

Mother and Father have one daughter together, H.H., born May 21, 2010. Father has four children in addition to H.H., and Mother has one son. Father's children live with their mothers. Mother's mother has guardianship over her son after the Department of Child Services (DCS) substantiated a case of neglect in July 2008.

Father has an extensive criminal history that includes convictions for domestic battery, various drug-related offenses, corrupt business influence, theft, forgery, operating a motor vehicle while privileges are forfeited for life, and fraud on a financial institution. Relevant here, Father was incarcerated around October 2011 for operating a motor vehicle while privileges are forfeited for life and possession of marijuana. He later pled guilty to forgery and fraud on a financial institution under a separate cause number. As a result of these convictions, he

was in prison for four-and-a-half years—spanning almost the entire period of the Child in Need of Services (CHINS) and termination proceedings at issue here.

[4] On July 17, 2013, DCS was called to investigate concerns that H.H. was sexually abused. Two weeks later, DCS was notified by H.H.'s pediatrician that she had tested positive for gonorrhea. At the end of August 2013, DCS filed a petition alleging that H.H. was a CHINS and requesting an order to remove H.H. from her home. The trial court authorized DCS to file a CHINS petition and to remove H.H. from the home because it appeared she had been sexually abused and Mother could not provide stable housing. H.H. was placed with her paternal grandparents.

[5] Mother and Father both admitted that H.H. was a CHINS at a hearing in late September 2013. A month later, the trial court entered a dispositional order that required Mother to, among other things, maintain stable housing, secure and maintain stable income, refrain from using illegal drugs, successfully complete substance-abuse treatment, attend all appointments to treat her mental health, and attend all appointments for recommended services such as home-based counseling services. Ex. 1, p. 21.

[6] Mother initiated her substance-abuse treatment in Anderson the following January. But she did not complete it because she moved to Marion in May 2014 and then married a man the following month. In September, she restarted substance-abuse treatment, but she was unsuccessfully discharged a month later

because she continued testing positive for marijuana—out of Mother's forty drug screens, thirty-two were positive for marijuana. She lived with her husband until January 2015, when she left her husband and moved into her uncle's home. Also in January, Mother restarted substance-abuse treatment. A short time later, Mother reunited with her husband and moved back into his home. She was unsuccessfully discharged from substance-abuse treatment again in April 2015. The same month, DCS filed a petition to terminate Mother's and Father's parental rights to H.H.

[7] In May 2015, Mother got a job at a fast-food restaurant. A month later, in June 2015, Father was released from prison and moved in with his parents and H.H. Mother and Father reunited. Mother left her husband, quit her job, and moved to Syracuse, Indiana, to live with her son, Father, and a friend. Less than a month after moving to Syracuse, Mother, her son, and Father moved into a home owned by Mother's mother.

[8] The trial court held a multi-day hearing on the termination petition September 8 and 29 and October 6, 2015. Father was not present for the last two days of the hearing because he was incarcerated for violating his parole. Mother's mental-health counselor testified that Mother missed half of her scheduled appointments. Mother's home-based case manager testified that Mother attended her visitation with H.H. regularly and successfully, but did not successfully complete her home-based services. Mother testified that she was supporting herself by donating plasma and occasionally cleaning homes. She further testified that she was receiving food stamps, allowing her to maintain a

stable source of food, but she was dependent on her mother for additional financial support and housing. The Family Case Manager (FCM) and the Court Appointed Special Advocate (CASA) both testified that termination is in the best interests of H.H.

[9] The trial court concluded, among other things, that there is a reasonable probability the conditions leading to H.H.'s removal will not be remedied, that continuation of the parent-child relationship poses a threat to H.H.'s well-being, and that termination is in her best interests. The trial court terminated Mother's and Father's parental rights on January 27, 2016. Both parents now appeal.

# Discussion and Decision

[10] Mother and Father contend that there is insufficient evidence to support the termination of their parental rights. When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). Rather, we consider only the evidence and reasonable inferences that are most favorable to the judgment of the trial court. *Id.* We will not set aside the trial court's judgment unless it is clearly erroneous. *Id.* To determine whether a judgment terminating parental rights is clearly erroneous, we review whether the evidence clearly and convincingly supports the trial court's findings[1] and whether the findings clearly

---

[1] Mother and Father dispute three of the trial court's factual findings: (1) "Mother's employment history, like her residential history, displays a lack of stability and lack of focus on [H.H.'s] needs[;]" (2) "[DCS's] involvement [with her son] did not result in reunification, and instead resulted in appointment of the child's

and convincingly support the judgment. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016).

[11] A petition to terminate parental rights must allege, among other things:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child[.]

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *In re I.A.*, 934 N.E.2d at 1133.

[12] Mother and Father argue that the trial court erred in terminating their parental rights because there is insufficient evidence that the conditions that resulted in

---

maternal grandmother as guardian for the child[;]" and (3) "Both parents have failed to participate in treatment services designed to address their parenting inadequacies." Appellants' App. p. 35-36. Because we find that the trial court's conclusions are supported by factual findings that the parents do not dispute, we need not address the support for these three facts in particular. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992); *In re B.R.*, 875 N.E.2d 369, 373 (Ind. Ct. App. 2007), *trans. denied*.

H.H.'s removal will not be remedied, and there is insufficient evidence that termination is in H.H.'s best interests.[2]

# I. Reasonable Probability That the Conditions Resulting in Removal Will Not Be Remedied

Determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied requires in a two-step analysis. *In re E.M.*, 4 N.E.3d 636, 642-43 (Ind. 2014). First, the conditions that led to removal or placement outside the home must be identified and, second, the court must determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* In determining fitness, trial courts have discretion to weigh a parent's prior history against efforts made only shortly before termination, and courts may find that past behavior is the best predictor of future behavior. *Id.*

---

[2] Mother and Father also argue that there is insufficient evidence to support the trial court's conclusion that continuation of the parent-child relationship poses a threat to the child's well-being. Indiana Code section 31-35-2-4(b)(2) requires proof of only one of the three conditions listed in subsection (B), and we conclude that there is sufficient evidence to support the trial court's determination that the conditions resulting in H.H.'s removal will not be remedied. Therefore, we need not address whether continuation of the parent-child relationship poses a threat to H.H.'s well-being.

[14] In this case, Father was in prison when H.H. was removed from Mother's home. Because Mother and Father were not residing in the same household, we address each parent separately.

## A. Mother

[15] Here, H.H. was removed from Mother because Mother did not have stable housing or income and H.H. contracted gonorrhea, apparently as a result of sexual abuse. In determining whether these conditions were likely to be remedied, the trial court may also consider Mother's response to the services offered through DCS. *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007), *trans. denied*. "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change." *In re L.S.*, 717 N.E.2d 204, 210 (Ind. Ct. App. 1999), *trans. denied*.

[16] At the time of the termination hearing, Mother had neither stable housing nor stable income, and she had not complied with much of the dispositional order. She stopped and started substance-abuse treatment on three different occasions without successfully completing it. Of her forty drug screens, only eight were negative. She missed half of her appointments with her mental-health counselor and did not complete the home-based services DCS provided. She had a steady job for one month, but otherwise she donated plasma, took odd cleaning jobs, and depended on family and friends for support. She moved

multiple times, and two of those moves were in the five months between when DCS filed the petition to terminate her parental rights and the hearing was conducted. In sum, Mother did not do what she was ordered to do by the trial court to provide a safe, stable home for H.H. The trial court did not clearly err in determining that the conditions that led to H.H.'s removal from Mother are unlikely to be remedied.

## B. Father

[17] Because H.H. was not living with Father at the time of removal by DCS, the inquiry with respect to him is whether there is a reasonable probability that he will not remedy the reason H.H. was not placed with him when she was removed from Mother's home. *See In re I.A.*, 934 N.E.2d at 1134. The trial court must first determine what conditions led to DCS placing and then retaining H.H. with her paternal grandparents rather than placing her with Father. *Id.* Second, the trial court must determine whether there is a reasonable probability that those conditions will not be remedied. *Id.*

[18] When H.H. was removed from her home in August 2013, Father was in prison, preventing DCS from placing her with Father. Father finished serving four-and-a-half years in prison in June 2015, he lived at four different addresses between June and September, and then he missed the final two days of hearings on the termination petition because he was incarcerated again for violating his probation. Given Father's extensive criminal history, we cannot say the trial court clearly erred in concluding that there is a reasonable probability the

circumstances that prevented DCS from placing H.H. with him will not be remedied.

## II. Best Interests of the Children

[19] Mother and Father next argue that the trial court erred in determining that termination is in H.H.'s best interests. In determining what is in a child's best interests, the trial court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied.* In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.* We have previously held that recommendations by both the FCM and the CASA to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158-59.

[20] Here, the FCM and the CASA both testified that termination is in the child's best interests. As we have already discussed, there is evidence that the conditions resulting in removal will not be remedied. Therefore, the trial court did not clearly err in concluding that termination of parental rights is in H.H.'s best interests.

[21] Affirmed.

Baker, J., and Najam, J., concur.